Citation Nr: 1527816 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 10-01 279 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUE

1. Entitlement to an initial evaluation for posttraumatic stress disorder (PTSD) in excess of 30 percent from January 10, 2006 to January 5, 2010, and in excess of 50 percent from January 6, 2010 to October 6, 2011. 

2. Entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU) for the period prior to January 6, 2010. 


REPRESENTATION

Appellant represented by: James G. Fausone, Attorney


ATTORNEY FOR THE BOARD

James G. Reinhart, Counsel


INTRODUCTION

The Veteran had active service from February 1993 to March 1995.

This matter comes to the Board of Veterans' Appeals (Board) on appeal of a May 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma in which the RO granted service connection for PTSD and assigned an initial disability rating of 30 percent, effective January 10, 2006. 

In June 2011, the Board remanded the issue of entitlement to an initial rating greater than 30 percent for PTSD to the RO to obtain any outstanding relevant records, provide additional notice to the Veteran, and provide a VA compensation and pension (C&P) examination to the Veteran. Those directives were carried out. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 

In an October 27, 2011 rating decision, the RO increased the ratings assigned for PTSD to 50 percent effective January 6, 2010 and to 70 percent effective October 7, 2011. 

In October 31, 2011 argument, the Veteran's representative, who is an attorney, stated as follows: "Please note, that the Veteran wishes to continue her appeal pursuant to the effective dates only and is not requesting an evaluation greater than 70 percent." 

Later in that argument, her representative stated "we respectfully request an evaluation of 70 percent be assigned effective December 10, 2009, or earlier. Thus the benefit sought on appeal is a 70 percent rating for PTSD for the entire period on appeal; i.e., from effective date of service connection for PTSD January 10, 2006, to the present. 

In this decision, the Board grants the benefit sought in full. 

In a December 2011 rating decision, the RO granted a total disability rating based on individual unemployability due to service-connected disabilities (TDIU), effective January 6, 2010. 

The Board denied this appeal in an August 2012 decision. The Veteran appealed that decision to the U.S. Court of Appeals for Veterans Claims (CAVC). In June 2013, the CAVC granted a joint motion for remand (JMR1) of the Veteran and the Secretary of Veterans Affairs (the Parties), vacated the August 2012 decision, and remanded the matter to the Board for action consistent with the terms of JMR1. 

Essentially, the Parties agreed in JMR1 that the Board must provide adequate reasons and bases as to why the Veteran's symptomatology does not more nearly approximate the criteria for higher disability ratings for PTSD for the period from January 10, 2006 to January 5, 2010 - during which time it is rated 30 percent - and for the period from January 6, 2010 to October 6, 2011 - during which time it is rated 50 percent. 

The Board again denied the appeal in an October 2013 decision. The Veteran appealed that decision to the CAVC and in February 2015, the CAVC granted again granted a joint motion for remand (JMR2) of the Parties, vacated the October 2013 decision, and remanded the matter to the Board for action consistent with the terms of JMR2. The terms of JMR2 involved the Board's reasons and bases and its factual findings. 

The issue of entitlement to a TDIU was not listed in the August 2012 and October 2013 Board decisions. The issue was raised during the course of this appeal which is an appeal of the initial rating assigned in the decision in which the RO granted service connection for PTSD. As explained by the CAVC, a TDIU is simply an alternate (from the criteria found in diagnostic codes) avenue for obtaining a total rating. See Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). If entitlement to a TDIU is raised during appeal of an initial rating assigned for the given disability then the issue of whether a TDIU is warranted is simply part of the claim for benefits for the underlying disability. Id. at 454. 

The question of employability was raised during the course of the appeal of the May 2008 rating decision. Indeed, the appellant filed her VA Form 21-8940, Application for Increased Compensation Based on Individual Unemployability during the appeal of the May 2008 decision and indicated that she last had substantially gainful employment in September 2005. 

Part of the claims file is in paper format and part is stored electronically. The Board has reviewed all of the claims file to ensure a complete review of the evidence in this case. 


FINDINGS OF FACT

1. The Veteran's PTSD results in occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to difficulty in adapting to stressful circumstances (including work or a worklike setting; inability to establish and maintain effective relationships, for the entire period on appeal prior to October 7, 2011. 

2. The Veteran has been unable to secure and follow a substantially gainful occupation due to her service-connected PTSD for the entire period on appeal prior to January 6, 2010. 


CONCLUSIONS OF LAW

1. The criteria for a 70 percent schedular rating have all been met for PTSD for the entire period prior to October 7, 2011. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.130, Diagnostic Code 9411 (2013 & 2014). 

2. The Veteran's PTSD has rendered her unable to secure and follow a substantially gainful occupation for the entire period prior on appeal prior to January 6, 2010. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.16(a) (2014)
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

VA must resolve reasonable doubt as to the degree of disability in favor of the claimant. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102. 4.3. Stated another way, the claimant prevails on any point when the evidence is favorable to the claimant or it is equally balanced, i.e., "in equipoise." See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999). 

The schedular criteria for rating mental disorders other than eating disorders are found in the General Rating Formula for Mental Disorders at 38 C.F.R. § 4.130 . The criteria are listed in the following paragraphs.

The criteria for a 100 percent rating are total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 

The criteria for a 70 percent rating are occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near- continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting; inability to establish and maintain effective relationships.).

The criteria for a 50 percent rating are occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory; impaired judgment; impaired abstract thinking; disturbance of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 

The criteria for a 30 percent rating occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 

That portion of VA's Schedule for Rating Disabilities ("the Schedule") that addresses service-connected psychiatric disabilities is based upon the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition and Fifth Edition, of the American Psychiatric Association (also known as "the DSM-IV"). 38 C.F.R. § 4.130 (2013 & 2014). The DSM-IV contained a Global Assessment of Functioning (GAF) scale, with scores ranging between zero and 100 percent, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health - illness. Higher scores correspond to better functioning of the individual.

GAF scores ranging between 61 and 70 are assigned when there are some mild symptoms (e.g., depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but when the individual is functioning pretty well and has some meaningful interpersonal relationships. American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th. ed., 1994).

GAF scores ranging between 51 and 60 are assigned when there are moderate symptoms (like flat affect and circumstantial speech, and occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

GAF scores ranging between 41 and 50 are assigned when there are serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

In JMR2, the Parties referred to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) case Vazquez-Claudio v. Shinseki, 713 F.3d 112, 115 (Fed. Cir. 2013) stating that in the previous Board decision, the Board had not adequately and accurately addressed the Veteran's "symptomatology or other symptoms of similar severity, frequency, and duration as necessary for an increased rating."

The appellant in Vazquez-Claudio argued that he should be entitled to a 70 percent rating if he had occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood if his symptoms cause impairment in "most" of those areas, regardless of what his symptoms actually are. Id. at 115. The Federal Circuit rejected that argument and upheld the CAVC's decision to deny the appeal. 

In doing so, the Federal Circuit explained as follows: 

Entitlement to a 70 percent disability rating requires sufficient symptoms of the kind listed in the 70 percent requirements, or others of similar severity, frequency or duration, that cause occupational and social impairment with deficiencies in most areas such as those enumerated in the regulation. The 70 percent disability rating regulation contemplates initial assessment of the symptoms displayed by the veteran, and if they are of the kind enumerated in the regulation, an assessment of whether those symptoms result in occupational and social impairment with deficiencies in most areas.

The explanation applies to other percentage criteria in the General Formula for Rating Mental Disorders as well as the Federal Circuit emphasized that the list of symptoms under a given rating is a nonexhaustive list, as indicated by the words "such as" that precede each list of symptoms. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 115 (Fed. Cir. 2013). Language in the decision indicates that the phrase "others of similar severity, frequency, and duration," can be thought of as symptoms of like kind to those listed in the regulation for a given disability rating. Id. at 116. 

VA mental health and psychiatric treatment notes from 2005 are the earliest relevant evidence of record. September 2005 notes document the Veteran's anxiety about her workplace. December 2005 notes document a GAF score of 55, and that the Veteran was having trouble sleeping, was divorcing her fifth husband, and had been very depressed. 

August 2006 treatment notes document that she was oriented times four, her appearance and speech were normal, her mood was good, and her affect was unrestricted, nonlabile, and appropriate. She had no suicidal or homicidal ideation or delusions or hallucinations. Her thought process was logical and goal directed, and her memory was grossly intact. 

September 2007 treatment notes document that she was seen for the first time in July 2005 for psychiatric symptoms and diagnosed with PTSD. At the time of the September 2007 note, she was upset about being denied VA disability benefits, had some irritability, was sleeping average, had anger outbursts at times, had an ok mood, and usually took good care of her children but had less desire to interact with them. 

Mental status examination found her oriented in all three spheres, cooperative, in good touch with reality, and appropriately dressed and groomed. Her speech was within normal limits and she had a goal directed linear thought process. No mania or hypomania was noted. She had no flight of ideas, looseness of association, or delusions. She denied homicidal or suicidal ideation and denied hallucinations. She had good insight and judgment. Her memory was grossly intact in all three levels. She was tearful, had an angry and anxious mood, and her affect was mood congruent. The physician assigned a GAF score of 60. 

November 2007 psychiatry notes document that she was still angry and irritable with other people and found it difficult to trust others. April 2008 VA psychiatry notes documents her report that she had good days and bad days. She reported that she still became anxious around people and was not able to function in public places. She reported that she had been in a good mood, was sleeping well, but continued to have relationship conflicts with her mother. She denied suicidal or homicidal thoughts, where were no psychotic or manic symptoms present. She was oriented times four, had normal speech, good eye contact, good mood, unrestricted, nonlabile, and appropriate mood, and there were no suicidal ideation, homicidal ideation, hallucinations, or delusions. Thought process was logical and, goal directed and memory was grossly intact. Insight and judgement were good. 

Treatment notes from July 2008 to March 2009 do not show a different picture. GAF scores assigned were 60 and 65. March 2009 treatment notes document that the Veteran was still struggling with her relationship with her mother. Treatment notes from August 2010 note the Veteran's description that her relationship with her sister was volatile and unpredictable. 

In her December 2009 VA Form 9, the Veteran reported that she had memory problems in that she forgets things such as appointment, taking her medications, and giving her children their medication. She reported that she hated crowds, rarely went out, and was anxious when she did go out. 

Included with that Form 9 was a statement from her spouse at the time. He reported that he had observed essentially the same behavior - that the Veteran was unable to go out in public and had memory problems. He also reported that she tended to overreact and that her emotions tended to take over. 

VA conducted a relevant C&P examination in October 2011. Based on the results of this examination the RO granted the increased initial ratings in the December 2011 decision. This report is relevant as to the period prior to October 2011 because it includes medical evidence regarding her PTSD and life events prior to the examination. Significantly, the events described in the report include that she had been married and divorced seven times and her occupational history since service. 

As to that occupational history, she reported that worked as a bus driver from 2000 to 2003, but was reassigned to a job as a bus monitor (accompanying the driver) after a minor accident. She reported that she had a conflict with the driver and quit the job. She reported that she then completed a program as a dental assistant, worked for a period of time in that field and then left that job because her assignment to work on a military base reminded her of the stressors that caused her PTSD. Since that time she had no regular employment. At the time of the examination, she reported that she made hair accessories and salsa and sold these through consignment to local stores and restaurants. She reported that she worked about two to three hours per day, two or three days per week in this endeavor. She reported that she does not like to be around other people so she takes her products to the consignment place and then leaves. The examiner commented that she had some success with her home making of hair accessories and salsa. She reported that she has regular suicidal thoughts but would not act on them. As to the marriages and social impairment, the examiner opined that her social and occupational function is severely impaired as seen in her lack of friends, failure of several marriages, intense anxiety in social situations, avoidance and interpersonal conflicts on the job. The examiner opined that this impairment is primarily attributed to her PTSD. The examiner also stated that she had some occupational success when working by herself with limited interpersonal contact. 

The examiner indicated that the Veteran had only one psychiatric condition, PTSD. He indicated that the symptoms of her PTSD were the following: Depressed mood, anxiety, suspiciousness, panic attacks that occur weekly or less often, near continuous panic or depression affecting the ability to function independently, appropriately and effectively, mild memory loss such as forgetting names, directions or recent events, disturbance of motivation or mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work or a worklike setting, inability to establish and maintain effective relationships, and suicidal ideation. 

The examiner remarked that the two jobs that the Veteran held since leaving active service terminated due to her interpersonal difficulties and/or intense anxiety. He also commented that she had some success homemaking hair accessories and salsa. 

He summed up the impairment due to her PTSD by opinion that her social and occupational functioning is severely impaired as seen in her lack of friends, seven failed marriages, intense anxiety in social situations and avoidance and interpersonal conflicts on the job. 

Given her and her employment difficulties already described and her multiple failed marriages, all attributed to her PTSD by the examiner in 2011, and her difficulty with other family members, her primary PTSD symptom is difficulty in adapting to stressful circumstances including work or a work like setting, and inability to establish and maintain effective relationships. 

The question then is the level of disability that this symptom has caused. Without question, the evidence shows that this has resulted in deficiencies in work and family relations. She has a demonstrated inability to maintain a marriage, there are repeated reports of difficulty with her relationship with her mother and sister, and it is clear that there are deficiencies in her work. She has routinely been found to have good judgment and her thinking has always been found to be within normal limits. This leaves the areas of school and mood. 

As to school, she did successfully complete a dental assistance program prior to when service connection for PTSD became effective, but there is no evidence of any further success, or deficiency for that matter, in school. There is simply limited evidence in the area of school. Her mood has been variable over the course of the appeal but on balance, the Board must find that the evidence is in equipoise as to deficiency in her mood over the entire period on appeal. This is shown by her anger and irritability as reported by her spouse in December 2009 as well as some of the already described treatment notes. 

The words "such as" preceding "work, school, family relations, judgement, thinking, and mood" appear to the Board to allow for some leeway where an area does not appear to apply. This appears to be the case with regard to "school" because there is no evidence that she has or has not had difficulty in school since she attended the dental assistant school prior to the grant of service connection for PTSD. There are six areas listed and she clearly has deficiencies in work, family relations, and mood. Given the lack of evidence one way or the other during the appeal period as to school, the evidence is thus at least in equipoise that her difficulty in adapting to stressful circumstances, including the inability to establish and maintain effective relationships has resulted in occupational and social impairment with deficiencies in most areas since the date that service connection for PTSD was established. 

The Board thus concludes that a 70 percent rating is warranted for PTSD for the entire period on appeal. 

As a matter of completeness and although the Veteran has limited her appeal to a rating of 70 percent for the entire period on appeal, the Board finds that the 100 percent criteria are not approximated in this case. The Veteran has never been found to have any of the symptoms listed in those criteria. She has never been found to have symptoms of similar severity, frequency or duration, to those enumerated in the 100 percent criteria. Significantly, she has never been shown to have total social and occupational impairment. In this regard, she has been able to make hair accessories and salsa, and sell them through consignment. Although this may not be substantially gainful employment it is evidence of less than total occupational impairment. For these reasons, the Board concludes that the preponderance of evidence is against a finding that her PTSD has resulted in total social and occupational impairment for any period on appeal. 

Also considered by the Board is whether referral is warranted for a rating outside of the schedule. To accord justice in an exceptional case where the scheduler standards are found to be inadequate, the field station is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1) (2014).

The criterion for such an award is a finding that the case presents an exceptional or unusual disability picture with related factors as marked interference with employment or frequent periods of hospitalization as to render impractical application of regular schedular standards. 38 C.F.R. § 3.321(b). The Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance; however, the Board is not precluded from raising this question, and in fact is obligated to liberally read all documents and oral testimony of record and identify all potential theories of entitlement to a benefit under the law and regulations. Floyd v. Brown, 9 Vet. App. 88 (1996). 

Extraschedular consideration involves a three step analysis. Thun v. Peake, 22 Vet. App. 111 (2008). First, the Board or the RO must determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the Veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. Id.

If the RO or the Board finds that the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the Veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id.

All symptoms and the level of disability resulting from the Veterans PTSD are addressed by criteria found in the rating schedule. Indeed, as indicated above, the lists of symptoms for the various disability levels are nonexhaustive and the Board finds that the schedular criteria encompass all symptoms suffered by the Veteran due to her PTSD. Also, the level of disability provided in the schedule exceeds that which the Veteran has. It therefore cannot be said that her level of disability is not contemplated by the schedular criteria. Therefore, the first prong of the Thun test is not satisfied and referral for extraschedular consideration is not warranted.

The Board has also considered whether the collective effect of his other service connected disability warrants referral for extraschedular consideration. See Johnson v. Shinseki, 762 F.3d 1362 (Fed. Cir. 2014). The Veteran has three other service-connected disabilities - hysterectomay associated with human papilloma virus rated as 30 percent disabling, migraine headaches rated as 30 perent disabling, and human papilloma virus rated as noncompensable. The record shows that she is properly compensated for those other service connected disabilities. The evidence does not rise to an equipoise level as to a collective effect of her other service-connected disabilities acting with her PTSD to make the schedular standards inadequate with regard to her PTSD. 

For these reasons, the Board declines to remand this case for referral for extraschedular consideration under 38 C.F.R. § 3.321(b). 

Now the Board turns to the TDIU question.

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities: 38 C.F.R. § 4.16(a) (2014). Provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. Id. 

The CAVC has described the phrase "substantially gainful employment" as meaning the ability to earn a living wage. Bowling v. Principi, 15 Vet. App. 1, 7 (2001). It has additionally explained that a substantially gainful occupation is one that "provides annual income that exceeds the poverty threshold for one person." Faust v. West, 13 Vet. App. 342, 356 (2000). Marginal employment is not considered substantially gainful employment. 38 C.F.R. § 4.16(a).

Because the Board in this decision grants her appeal as to the 70 percent rating for PTSD for the entire appeal period, she meets the schedular requirements for TDIU under 38 C.F.R. § 4.16(a) for the entire appeal period. From the description of her salsa and hair accessory activities, the Board concludes that this activity is not substantially gainful employment. Her VA Form 21-8940, received by VA in January 2010, shows that she had not been employed in a substantially gainful occupation since September 2005. The question then is whether she is unemployable due to service-connected disability or disabilities for that entire period or for a portion of that period. 

The record shows that the Veteran has been unable to secure and follow a substantially gainful occupation due to her PTSD for the entire period on appeal. Her anxiety and demonstrated difficulty in adapting to stressful circumstances including work or a work like setting, and inability to establish and maintain effective relationships, as described in the facts already listed, places her in a position, under the facts of this case, where employment options are so limited so as to be of no practical existence. Thus a TDIU is warranted. 

In making all of these determinations, the Board has considered the various GAF scores assigned during the course of the claim and appeal. Those scores do not indicate as severe disability as the 2011 examiner found and as the Board finds. However, the GAF scores are only one item of evidence in this case. What is clear to the Board is that the findings of the 2011 examiner are applicable to the entire period on appeal. The examiner addressed her occupational and social history and that history remained the same from the date that service connection was granted for PTSD to the date of the examination. There are no earlier examinations of record that consider all of her history in this context. 

In conclusion, the Board finds that the criteria have been met for a 70 percent rating for PTSD and for a TDIU for the entire period on appeal. 

Due Process

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See eg. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2014). In the instant case, VA provided adequate notice in letters sent to the Veteran in August 2011. Any timing defect in the notice is harmless error as the Veteran had a meaningful opportunity to participate in the development of her claim after the notice letter was sent and the RO readjudicated the issues on appeal in a December 2011 rating decision. 

VA has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service and VA treatment records are associated with the claims file and VA provided an adequate examination in October 2011. 

There is no indication of additional existing evidence that is necessary for a fair adjudication of the claim that is the subject of this appeal. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. 

ORDER

A 70 percent disability rating is granted for the entire period on appeal prior to October 7, 2011. 

A TDIU is granted for the entire period on appeal prior to January 6, 2010. 


____________________________________________
JOHN J. CROWLEY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs